UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| TONYA SPARKS,<br>f/k/a TONYA RIDLEY, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. 1:13-cv-871 |
| v. | ) <br> ) | Honorable Phillip J. Green |
| COMMISSIONER OF<br>SOCIAL SECURITY, | ) <br> ) <br> ) | **OPINION** |
| Defendant. | ) <br> ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of the unfavorable portion of an April 17, 2007, decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB), and granting in part and denying in part her claim for supplemental security income (SSI) benefits. The Commissioner denied plaintiff's claim for DIB benefits because she found that plaintiff was not disabled on or before September 30, 2004, the date plaintiff's disability insured status expired.[1] The Commissioner found that plaintiff was disabled on and after January 3, 2006, and was entitled to SSI benefits, but she was not disabled and not entitled to SSI benefits at any earlier date. (A.R. 14-27).

This case has a complex administrative history. An examination of that history is necessary because it provides the framework for the specific time periods at issue on plaintiff's

_____

[1] It was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before September 30, 2004. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

claims for DIB and SSI benefits, and it provides an explanation why this court is conducting appellate review in September 2014 of an administrative decision entered in April 2007.  On July 24, 1998, plaintiff filed applications for DIB and SSI benefits.  Her claims were denied on initial review and on reconsideration.  Plaintiff received a hearing before an administrative law judge (ALJ) on August 17, 1999.  (*see* A.R. 35).  On November 22, 1999, an ALJ issued a decision finding that plaintiff was not disabled.  (A.R. 35-44).  On March 7, 2001, the Appeals Council denied review and the ALJ's November 22, 1999, decision became the Commissioner's final administrative decision.  On April 26, 2001, plaintiff filed a complaint with this court seeking judicial review of the Commissioner's decision.   On August 20, 2002, the court entered a judgment affirming the Commissioner's decision finding that plaintiff was not disabled through November 22, 1999.  *Ridley v. Commissioner*, 5:01-cv-49 (W.D. Mich. Aug. 20, 2002) (*see* A.R. 57-58).

On April 30, 2002, plaintiff filed a new application for DIB benefits (*see* A.R. 46), followed on May 20, 2002, by another new application for SSI benefits.  (A.R. 114-16).  Plaintiff continued to allege a 1998 onset of disability on these claims.[2]  (A.R. 114-16).  On April 27, 2004,

_____

[2]*Res judicata* barred any claim of an onset of disability date before November 23, 1999.  *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993).  Further, SSI benefits are not awarded retroactively for months prior to the application for benefits.  20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus, June 2002 would ordinarily be plaintiff's earliest possible entitlement to SSI benefits based on the application she filed on May 20, 2002. (A.R. 114-16).

Plaintiff argues that her claim for SSI benefits has a "protective filing date of July 16, 2001." (Plf. Brief at 4) (citing A.R. 45, 111).  "Protective filing date" is the term used for the first time an individual contacts the Social Security Administration about filing for benefits. See http://www.ssa.gov/glossary.htm (last visited Sept. 29, 2014).  A protective filing date allows an individual to have an earlier application date than the date the signed application is actually filed.  *Id.* Defendant's brief generally ignores the protective filing date issue.  Defendant simply states that plaintiff filed her applications for DIB and SSI benefits on the same date, April 30, 2002 (Def. Brief at 1), followed by a citations to A.R. 45 (which indicates that plaintiff filed her application for SSI

plaintiff received an administrative hearing before an ALJ at which she was represented by counsel. (*see* A.R. 70).  On September 23, 2004, an ALJ issued a decision denying these claims for DIB and SSI benefits.  (A.R. 70-78).  On March 27, 2006, the Appeals Council granted plaintiff's request for review, vacated the ALJ's decision, and remanded the matter for further proceedings.  (A.R. 98-100). While plaintiff's request for review by the Appeals Council was pending, she filed new applications for DIB and SSI benefits.  In these applications she alleged a September 24, 2004 onset of disability. On August 28, 2006, the ALJ conducted a consolidated administrative hearing on all plaintiff's claims.  Plaintiff was represented by counsel.  (A.R. 720-58).  On April 17, 2007, the ALJ entered the decision which is now subject to judicial review.  (A.R. 14-27).  The ALJ found that plaintiff was disabled on January 3, 2006, and was entitled to SSI benefits on and after that date.  Plaintiff was not entitled to SSI benefits at any time before January 3, 2006.  She was not entitled to DIB benefits because she was not disabled on or before September 30, 2004, her date last disability insured.  (A.R. 14-27).  On April 28, 2009, the Appeals Council denied review and the ALJ's decision became the Commissioner's final administrative decision. (A.R. 4-7).

The Appeals Council's Notice advised plaintiff and her attorney that plaintiff had 60 days from her receipt of the Notice within which to file a civil action.  (A.R. 5).  The Notice stated that the Administration assumes receipt "5 days after the date on the Notice" unless plaintiff demonstrated to the Administration that she did not receive the Notice within the 5-day period. (A.R. 5-6).  Thus, under ordinary circumstances, plaintiff's deadline for filing this lawsuit would

---

benefits on July 16, 2001 and A.R. 114-16 (which indicates that the application was filed on May 20, 2002).  Plaintiff's claim for SSI benefits will be considered giving her the benefit of a protective filing date of July 16, 2001.

have expired in early July 2009.  The Appeals Council's Notice contained the following provision

providing for an extension of time within which to file an appeal under limited circumstances:

> If you cannot file for court review within 60 days, you may ask the Appeals Council to
> extend your time to file.  You must have a good reason for waiting more than 60 days to ask
> for court review.  You must make the request in writing and give your reason(s) in the
> request.

(A.R. 6).  Plaintiff's attorney apparently sent a letter to the Appeals Council requesting an extension

of her deadline for filing a civil action.  The letter is not included in the certified administrative

record.  Thus, the record provides the court with no explanation when plaintiff's attorney filed the

letter, and the court has received no explanation of the reasons why plaintiff delayed until August

13, 2013, to file her complaint.  The record does contain a letter dated July 18, 2013, in which the

Appeals Council granted plaintiff an extension of time to file this lawsuit:

> On April 28, 2009, the Appeals Council denied a request for review of the Administrative
> Law Judge's decision.  The Council has now received your request for more time to file a
> civil action (ask for court review).
>
> **We Are Giving You More Time to File a Civil Action**
>
> The Appeals Council now extends the time within which you may file a civil action (ask for
> court review) for 30 days from the date you receive this letter.  We assume that you received
> this letter 5 days after the date on it after the date on it unless you show us that you did not
> receive it within the 5-day period.

(A.R. 2).  Plaintiff filed her complaint August 13, 2013.  Defendant's answer concedes that plaintiff

initiated this lawsuit "within the appropriate time period set forth in the Action of Appeals Council

on Request for Review dated April 28, 2009, with the subsequent 30-day extension of time to file

a civil action dated July 18, 2013."  (docket # 7, ¶ 2, ID#s 14-15).  Thus, the Commissioner's final

administrative decision dated April 17, 2007, is subject to judicial review under 42 U.S.C. §§ 405(g),

1383(c)(3).  The relevant time period on plaintiff's claim for DIB benefits is from her earliest

possible onset of disability date not barred by *res judicata*, November 23, 1999, through September 30, 2004, her date last disability insured. The relevant time period on her claim for SSI benefits runs from the protective filing date of July 16, 2001, through January 2, 2006, one day before the date she was found disabled.

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 11). Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. "The substantial evidence on the record demonstrated that controlling weight was not given to treating and examining professionals. Additionally, the testimony of the Commissioner's medical expert was given no weight."

2. "Ms. Spark's testimony was credible and entitled to be considered fully by the ALJ."

(Plf. Brief at 1, docket # 12). The Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters*

*v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## <u>Discussion</u>

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability on October 30, 1998, through September 30, 2004, but not thereafter. (A.R. 16-17). Plaintiff had not engaged in substantial gainful activity on or after October 30, 1998. (A.R. 17). Plaintiff had the following severe impairments: "obesity, asthma,

fibromyalgia,[3] seizure disorder, pain syndrome, depressive disorder, and anxiety disorder." (A.R. 17). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 21). The ALJ found that before January 3, 2006, plaintiff retained the following residual functional capacity (RFC):

> Prior to January 3, 2006, the claimant's impairments prevented her from: lifting or carrying over 10 pounds occasionally or more than 5 pounds frequently; using ladders, ropes or scaffolds; more than occasional bending or twisting; crawling, squatting, kneeling, or stair climbing; working around dangerous unprotected machinery or unprotected heights; more than occasional overhead reaching with the upper extremities; more than occasional pushing or pulling, with the upper extremities; more than occasional handling or fingering with the right hand; more than occasional use of foot controls. The claimant required a fully directional option to sit or stand. She had a residual functional capacity for a range of simple unskilled sedentary work that does not require maintaining intense concentration, or more than minimal contact with co-workers and the general public.

(A.R. 22). The ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 22-25). Plaintiff was unable to perform her past relevant work. (A.R. 25). Plaintiff was 34-years-old as of the date of her alleged onset of disability and 42-years-old on the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 25). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 25). The ALJ found that the transferability of job skills was not material to a determination of disability. (A.R. 25). The ALJ then turned to the testimony of a

---

[3]In *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir. 2007), the Sixth Circuit acknowledged the medical difficulty of making a diagnosis of a condition that "present[s] no objectively alarming signs." *Id.* at 243. "[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits[.]" *Vance v. Commissioner*, 260 F. App'x 801, 806 (6th Cir. 2008); *see Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) ("[A] diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits."). "'Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [the claimant] is one of the minority.'" *Vance v. Commissioner*, 260 F. App'x at 806 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *Torres v. Commissioner*, 490 F. App'x 748, 754 (6th Cir. 2012) (same).

vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 3, 175 jobs in Michigan that the hypothetical person would be capable of performing.  (A.R. 754-55).  The ALJ found that this constituted a significant number of jobs.  Using Rules 201.27 and 201.28 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled through January 2, 2006.  (A.R. 26).  The ALJ found that plaintiff was disabled on and after January 3, 2006 (A.R. 26-27), and plaintiff does not seek judicial review of the favorable portion of the ALJ's decision.[4]

## 1.

Plaintiff argues that the ALJ should have given controlling weight to the opinion of her primary care physician, Paula Therrien, M.D., that plaintiff was unable to work.  (Plf. Brief at 13; Reply Brief at 2).  The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special significance.  *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the

---

[4]The court has disregarded plaintiff's persistent and erroneous statements that the ALJ found that she was disabled as of "January 30, 2006." (Plf. Brief at 1, 3, 10, 14).  Similarly, the "error" messages appearing in the first two footnotes of defendant's brief, and the statement at the end of the first footnote that plaintiff "would not be eligible for SSI benefits until May 30, 3002" (Def. Brief at 1 n.1 and 3 n.2), have been disregarded.

Commissioner, not the treating physician."). Likewise, "no special significance"[5] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see*

_____

[5]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.937(d)(3).

*also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

On June 17, 2003, Dr. Therrien completed a Michigan Family Independence Agency form. On line "K," she stated that plaintiff was "unable to work." (A.R. 452). The ALJ found that Dr. Therrien's opinion that plaintiff was "unable to work" was conclusory and that the issue of disability is reserved to the Commissioner. (A.R. 24). The ALJ was correct on both accounts. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see also Curler v. Commissioner*, 561 F. App'x 464,

(6th Cir. 2014) (A treating psychiatrist's opinion that the claimant was unable to work which was recorded on a state agency form consisting of "checked boxes," providing no explanation or reference to underlying treatment records, was not entitled to controlling weight or even any particular weight because the issue of disability is reserved to the Commissioner.); *Sims v. Commissioner*, 406 F. App'x at 980 n.1 ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Dr. Therrien's underlying treatment notes did not support the level of functional impairment that she suggested.[6] (A.R. 24; *see* A.R. 469-75, 577-81, 637-55). The court finds no violation of the treating physician rule.

## 2.

Plaintiff's first statement of error contains a vague reference to "treating and examining professionals" (Plf. Brief at 1), but the only developed argument found in her brief and reply brief is the argument with regard to Dr. Therrien addressed in section 1. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

In similar fashion, plaintiff has waived whatever error she was claiming based on the statement that "the testimony of the Commissioner's medical expert was given no weight." (Plf. Brief at 1). There is no developed argument in plaintiff's briefs addressing the alleged error, much less legal authority supporting her argument. The issue is deemed waived.

---

[6] Rheumatology is the relevant specialty for evaluating fibromyalgia. *Rogers v. Commissioner*, 486 F.3d at 245. Robert Ike, M.D., plaintiff's treating rheumatologist from the University of Michigan, did not find any impairment that would preclude work at the level indicated in the ALJ's factual finding regarding plaintiff's RFC. (A.R 18-20, 23-25; *see* A.R. 434-51, 564-76, 704-19).

-11-

Even assuming the issue regarding the medical expert had not been waived, it is meritless. Plaintiff makes passing references to the medical expert in the introduction and conclusion sections of her brief. In the introduction, she states: "[T]he ALJ did not believe these impairments met or equaled the required level for disability eligibility until January 3[], 2006, despite the opinions of the treating physician and the Commissioner's own medical expert witness." (Plf. Brief at 3). In the conclusion, she states: "The medical expert and the vocational expert both testified at the hearing that is [sic] Ms. Sparks' testimony was credible, meaning the medical records supported her testimony, then she was disabled back to 2002 at the latest and there were no jobs she could do." (*Id.* at 13-14). The medical expert never testified that plaintiff's testimony was credible. The ALJ determines the credibility of witness testimony, including the claimant, medical experts, and vocational experts. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Reynolds v. Commissioner*, 424 F. App'x 411, 416-17 (6th Cir. 2011); *accord Barney v. Commissioner*, 1:08-cv-1225, 2010 WL 1027877, at * 3 (W.D. Mich. Jan. 20, 2010) ("The ALJ was not bound to accept the hearing testimony of any witness, including the VE.") (citing *Banks v. Massanari*, 258 F.3d 820, 827-28 (8th Cir. 2001)). Here, the medical expert, Dr. Greenbaum, never offered an opinion regarding the credibility of plaintiff's testimony. (A.R. 747-53). Dr. Greenbaum did offer an opinion that plaintiff was disabled as of the date of the hearing, August 28, 2006. (A.R. 751). This was consistent with the ALJ's decision finding that plaintiff was disabled on and after January 3, 2006. The medical expert testified that plaintiff could be found disabled as of an earlier date, if her testimony was deemed credible. (A.R. 752). The ALJ found

that plaintiff's testimony was not fully credible, and held that she was not disabled before January 3, 2006. The court finds no basis for disturbing the Commissioner's decision.

### 3.

Plaintiff argues that the ALJ "could not have reviewed the long [medical] history and still made a finding that Ms. Sparks was not credible." (Plf. Brief at 14). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*,

246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments was not fully credible. The record did not support the profound level of limitation that plaintiff claimed. Some evaluators reported that plaintiff gave less than full effort during evaluations. (A.R. 24; *see* A.R. 408, 602-03, 606). Plaintiff's daily activities further undercut her claims of disabling limitations. (A.R. 24). It was appropriate for the ALJ to take plaintiff's daily activities into account in making her credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:   October 2, 2014               /s/  Phillip J. Green
                                       United States Magistrate Judge